No. 03-652

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 303

_____

STATE EX REL. SHAWN LEE DUSEK,　　　　　　　）
　　　　　　　　　　　　　　　　　　　　　　　）
　　　　　　Petitioner,　　　　　　　　　　　）　　O P I N I O N
　　　　　　　　　　　　　　　　　　　　　　　）　　and
　　　　v.　　　　　　　　　　　　　　　　　　）　　O R D E R
　　　　　　　　　　　　　　　　　　　　　　　）
EIGHTH JUDICIAL DISTRICT COURT,　　　　　　）
CASCADE COUNTY,　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　　　　）
　　　　　　Respondent.　　　　　　　　　　　）

_____

¶1　　Shawn Lee Dusek has applied for issuance of a writ of supervisory control.  On October 7, 2003, we issued an order granting Dusek's request for leave to proceed in forma pauperis and granting Respondent District Court, the Attorney General, and the County Attorney of Cascade County twenty days in which to file and serve written responses to Dusek's application.  A response from the Attorney General has now been filed.

¶2　　Dusek is charged with several offenses which are now pending before the Eighth Judicial District Court, Cascade County, as Cause No. ADC-03-380-1.  During the course of the proceeding, Dusek filed a request for substitution of judge, which was denied by the District Court as untimely.  Asserting that the District Court is proceeding under a mistake of law and that the remedy of a direct appeal is inadequate, Dusek has sought review of the District Court's denial of his request for substitution of judge.  In its response, the State has conceded that the District Court is proceeding under a mistake of law and that direct appeal is an inadequate remedy.  However, the parties differ in the relief they seek from this Court.

1

¶3    According to the pleadings filed by the parties, on August 22, 2003, Dusek was charged by Information with three drug-related felonies and one misdemeanor. On August 26, 2003, Vince van der Hagen of the Cascade County Public Defender's Office filed a notice of appearance of counsel and the District Court, at the request of the prosecutor, scheduled Dusek's arraignment for September 4, 2003. Van der Hagen moved the District Court to set a bail hearing and on August 27, 2003, the District Court scheduled the same for September 2, 2003, at which time Dusek and van der Hagen appeared before the District Court for the bail hearing.

¶4    Dusek indicates that on September 4, 2003, while incarcerated, he was served by the State with the Information, supporting affidavit, and motion and order for leave to file direct and was on that same day arraigned in the District Court. On September 9, Dusek filed a request for substitution of judge. The District Court denied the motion as untimely, concluding that Dusek and van der Hagen clearly had notice on August 26, 2003 (the date of the Court's order setting the arraignment) and August 27, 2003 (the date of the Court's order setting the bail hearing) of which district court judge had been assigned to the matter and that the Defendant's motion, filed on September 9, 2003, was beyond the ten-day period allowed for substitution under § 3-1-804(1)(c), MCA (2001). The District Court conducted no fact-finding on the matter and relied upon a review of the District Court file.

¶5    Dusek argues that the District Court improperly applied § 3-1-804(1)(c), MCA, which provides, in part, as follows:

> When a judge is assigned to a cause for 30 consecutive days after service of a summons, or 10 consecutive days after service of an order to show

cause, information or other initiating document, and no motion for substitution of judge has been filed within said time period, the plaintiff or the party filing the order, information or other initiating document, and the party upon whom service has been made shall no longer have a right of substitution. . . .

Citing to the definitions of "party" and "service" in Black's Law Dictionary, Dusek argues that as the party defendant in this matter, he was entitled to personal service of the Information by an authorized agent of the State before the ten-day period set forth in § 3-1-804(1)(c), MCA, commenced. The State concurs that the District Court erred in computing the ten-day period from the time Dusek received notice of the assigned judge, as the statute requires the period to begin when "service" of the Information occurs.

¶6     Supervisory control is an extraordinary remedy that is only appropriate when a district court is proceeding under a mistake of law which, if uncorrected, would cause insignificant injustice. *Evans v. Montana Eleventh Judicial District Court*, 2000 MT 38, ¶ 15, 298 Mont. 279, ¶ 15, 995 P.2d 455, ¶ 15. Our determination of whether supervisory control is appropriate is a case-by-case decision based on the presence of extraordinary circumstances and the need to prevent an injustice from occurring. *Park v. Sixth Judicial District Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 3, 961 P.2d 1267, ¶ 13. Writs of supervisory control are "justified by circumstances of an emergency nature, as when a cause of action or right has arisen under conditions making due consideration in the trial courts and due appeal to this Court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary or proper." Rule 17(a), M.R.App.P. We have previously exercised supervisory control to address the proper application of § 3-1-804, MCA, in the civil context.

3

*See Goldman Sachs Group, Inc. v. Mont. Second Judicial District*, 2002 MT 83, 309 Mont. 289, 46 P.3d 606.

¶7  We concur with the parties that the District Court is proceeding under a mistake of law in this case and conclude that exercise of supervisory control is appropriate herein.  The District Court's computation of the ten-day period from the time Dusek received notice of the assigned judge, rather than from the time he was served with the Information, violates the plain meaning of § 3-1-804(10)(c), MCA, which provides that a party shall have a right of substitution for "10 consecutive days after service of an order to show cause, information, or other initiating document."

¶8  Dusek next contends that the ten-day period wherein a defendant may elect to substitute a judge should always commence at the time of the defendant's arraignment, citing § 46-12-201(1), MCA (2001), which states, in relevant part:

> Arraignment must be conducted in open court and must consist of reading the charge to the defendant or stating to the defendant the substance of the charge and calling on the defendant to plead to the charge.  The defendant must be given a copy of the charging document before being called upon the plead.

Dusek argues that when § 3-1-804 is read in conjunction with § 46-12-201, "it is clear that in a criminal action, the arraignment is the time set for service of the information upon the criminal defendant" and urges this Court to declare that the arraignment shall serve as the exclusive time for service of the Information in all criminal cases.

¶9  It is appealing to adopt Dusek's argument and thereby create a bright-line rule which would simplify the calculation of the ten-day period for substitution of a judge in criminal proceedings under § 3-1-804, MCA.  Unfortunately, however, the law affords no such

4

luxury. Section 46-12-201(1), MCA, merely requires that a defendant be given a copy of the Information prior to entering his plea. It does not prohibit service of the Information prior to the arraignment. Section 3-1-804, MCA, contemplates a ten-day period which commences whenever the Information is served, without regard to the timing of the arraignment. As the State notes, there are instances where the defendant is served a copy of the Information prior to the arraignment, thereby commencing the running of the ten-day period under § 3-1-804, MCA, before the arraignment is held. In this case, the District Court took no evidence and entered no finding regarding the date on which Dusek was served with the Information, and thus, that factual question will need to be resolved upon remand.

¶10 Our statutes provide little guidance in regard to the meaning of "service" in the criminal context. Unlike federal law, where rules for service of a criminal summons have been adopted which are substantially similar to service in civil cases, *see* Wright, Federal Practice and Procedure: Criminal 3d, Section 55, Montana has not adopted rules defining criminal service.

¶11 We must guard against the inclination to view service in the criminal context in the same manner as service in the civil context. Different objectives are sought by each, as ably described by Judge Michael Stallman, Criminal Court of the City of New York, Kings County:

> In a criminal action, unlike a civil action, the court's exercise of jurisdiction does not depend on proper service of process. All that is required is that the defendant come, or be brought, before the court for arraignment. . . .
>
> Proper service is vital to a civil action. It not only gives a defendant constitutionally adequate notice (*see, Mullane v. Central Hanover Bank &*

5

> *Trust Co.*, 339 U.S. 306), it is a symbolic exercise of State power. . . . It conveys that a private party is invoking the sovereign's power to redress what is essentially a private wrong. If the defendant fails to appear, proof of proper service can be used, *inter alia*, to enter a default judgment. Actual notice alone is insufficient. Unless service is made in the statutorily required manner, the court cannot subject the defendant to its jurisdiction without his consent.
>
> Such ritual is not required in a criminal case. A criminal defendant is accused of perpetrating a public wrong and can be brought summarily before the court, without prior notice, by arrest. Since default judgments are ordinarily unavailable in criminal cases . . . a defendant's physical presence is required by the court to exercise personal jurisdiction. How that presence is obtained is immaterial.

*People v. Gross* (N.Y. 1990), 560 N.Y.S.2d 227, 239 (citations omitted). Understanding then, that the exercise of criminal jurisdiction over a defendant is not dependent upon service of the Information, we look to the plain meaning of § 3-1-804(1)(c), MCA (2001), to determine what the provision requires in the criminal context.

¶12 We concur with Dusek's argument that the term "party," upon whom the statute requires service of the Information to be made, refers to the defendant personally and, therefore, reject the State's argument that the statute can be satisfied by service of the Information upon defense counsel. Personal service upon the defendant is required, and if that does not occur until the arraignment, then the ten-day time period under § 3-1-804, MCA, does not begin to run until the arraignment. Further, "service" requires personal service upon the defendant at the instigation of the State, and cannot be satisfied, contrary to the State's suggestion, by a defendant obtaining a copy of the Information through other means, such as discovery.

6

¶13    Having concluded that the exercise of supervisory control is warranted herein and that the District Court improperly applied § 3-1-804(1)(c), MCA, to Dusek's request for substitution of judge in this matter,

¶14    IT IS HEREBY ORDERED that the application of Shawn Lee Dusek for a writ of supervisory control is hereby GRANTED.  The District Court's order denying Dusek's request for a substitution of judge is set aside and this matter is remanded for further proceedings consistent herewith.

¶15    The Clerk is directed to mail a true copy of this order to all counsel of record and to the Honorable Thomas M. McKittrick, District Court.

DATED this 4TH day of November, 2003.

/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA COTTER

7

Justice James C. Nelson concurring.

¶16 I concur in the result of our order. Furthermore, based on the present state of the law and the language of § 3-1-804(10)(c), MCA, I agree that the Court's order is legally correct.

¶17 That said, I believe that we should amend the rule to provide a "bright line" for summary disqualification of judges in criminal cases. In the first place, the interpretation we have articulated--though correct--is complicated in its application and will likely be a trap for unwary defendants and criminal defense attorneys. Additionally, while there is no "service" of the information as in the civil context, nevertheless in that context, there is a return of service which leaves no question as to when and by whom the summons and complaint was served. There is no similar record document in criminal cases leaving the fact, time and method of service amenable to dispute. Also, persons accused of crimes sitting in jail and awaiting the appointment of counsel probably do not know that they have the right to substitute a judge--even assuming they had access to the paper, copier, computer, etc. to prepare and file such a motion. Finally, the 10 days allowed for substitution is extremely short and may be eaten up by delay in the public defender actually seeing his or her client and determining the client's wishes.

¶18 Criminal defendants should have no less right to substitute a judge than do civil litigants, and the present process puts the accused at a serious disability. For these reasons I would amend the rule to provide a bright line for determining when the accused's time to file a summary disqualification motion starts to run.

/S/ JAMES C. NELSON

8